Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/26/2016 02:10 PM CDT

Jeremy L. Klein and Kimberly J. Klein, husband
and wife, and Robert D. Lynch and Elaine M.
Lynch, husband and wife, appellees, v.
Oakland/Red Oak Holdings, LLC,
a Nebraska limited liability
company, appellant.

___ N.W.2d ___

Filed August 26, 2016.    No. S-15-380.

1. **Trusts: Equity.** An action to set aside a trustee's sale sounds in equity.
2. **Equity: Appeal and Error.** On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict in a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another.
3. **Evidence: Stipulations: Appeal and Error.** In a case in which the facts are stipulated, an appellate court reviews the case as if trying it originally in order to determine whether the facts warranted the judgment.
4. **Trusts: Deeds: Sales.** The Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 2009), authorizes a trust deed to be used as a security device in Nebraska and provides that real property can be conveyed by trust deed to a trustee as a means to secure the performance of an obligation.
5. ____: ____: ____. The Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 2009), includes detailed procedures that, in the event of a breach of the underlying obligation, permit the trust property to be sold without the involvement of any court.
6. ____: ____: ____. The Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 2009), allows a trust deed to expressly confer upon a trustee the power of sale.

7. ____: ____: ____. Pursuant to the power of sale, a trustee can sell the property conveyed by a trust deed without any court's authorization or direction, though the trustee must comply with procedural requirements contained in the Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 2009).

8. **Trusts: Deeds: Foreclosure: Mortgages: Words and Phrases.** Because the Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 2009), allows the property securing an obligation to be sold without the judicial involvement that would be required to foreclose upon a mortgage, the proceedings surrounding a trustee's sale pursuant to the act are sometimes referred to as "nonjudicial foreclosure" or "trustee foreclosure."

9. **Trusts: Deeds: Statutes.** Because trust deeds do not exist at common law, the trust deed statutes are to be strictly construed.

10. **Real Estate: Notice.** A purchaser of real estate is required to take notice of instruments properly placed of record in the office of the register of deeds.

11. **Deeds: Warranty: Title.** Increased diligence, alertness, and scrutiny in searching for the facts are expected of a purchaser who accepts a deed that is less than a general warranty with full covenants of ownership and title.

12. **Title.** Fundamental to the law of registry is the principle of establishing priority of title.

13. **Judicial Sales: Negligence: Fraud.** The doctrine of caveat emptor applies to all judicial sales, subject to the qualification that the purchaser is entitled to relief on the ground of after-discovered mistake of material facts or fraud, where the purchaser is free from negligence.

14. **Trusts: Sales.** The doctrine of caveat emptor applies in trustee's sales.

15. **Taxes: Deeds: Title: Liens.** A treasurer's tax deed, issued pursuant to Neb. Rev. Stat. § 77-1837 (Cum. Supp. 2012) and in compliance with Neb. Rev. Stat. §§ 77-1801 to 77-1863 (Reissue 2009 & Cum. Supp. 2012), passes title free and clear of all previous liens and encumbrances.

Appeal from the District Court for Phelps County: STEPHEN R. ILLINGWORTH, Judge. Reversed and remanded with directions.

Mark J. LaPuzza and Ashley Dieckman, of Pansing, Hogan, Ernst & Bachman, L.L.P., for appellant.

Natalie G. Nelsen, of Dier, Osborn, Cox & Nelsen, P.C., L.L.O., for appellees.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, and Stacy, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Jeremy L. Klein and Kimberly J. Klein, husband and wife, and Robert D. Lynch and Elaine M. Lynch, husband and wife, (both couples collectively the appellees) purchased a trust deed at a trustee's sale for certain real estate. Prior to the trustee's sale, treasurer's tax deeds for the same real estate had been issued to a third party. By operation of law, a treasurer's tax deed passes title free and clear of all previous liens and encumbrances, and therefore, the treasurer's tax deeds had divested the trust deed of title. The treasurer's tax deeds were recorded prior to the trustee's sale, but the appellees failed to examine the record prior to the trustee's sale. The appellees brought this action in equity against Oakland/Red Oak Holdings, LLC (Oakland), the appellant, which was the beneficiary of the trust deeds, seeking to set aside the sale and to be reimbursed the purchase price of $40,001. The district court determined that the trustee's sale was void and ordered that Oakland return the purchase price to the appellees. Oakland appeals. For the reasons set forth below, we determine that the district court erred in its determination, and we reverse, and remand with directions.

## STATEMENT OF FACTS

Our statement of facts is taken from the parties' stipulated statement of facts on which the case was tried to the district court. The parties' stipulated statement of facts provided as follows:

1. Oakland State Bank was the beneficiary under five deeds of trust from David Sickels and Debra Sickels. The Deeds of Trust are attached hereto as Exhibits 1 through 5.

2. Larry Jobeun was named as Trustee under each deed of trust and T. Randall Right was substituted as Trustee

on May 20, 2004. The substitution of Trustee is recorded with the Register of Deeds of Phelps County and is attached hereto as Exhibit 6.

3. The Deeds of Trust were recorded against the following real estate owned by David Sickels and Debra Sickels: Lot Seven (7) and Eight (8), Einsel's Second Addition to Holdrege, Phelps County, Nebraska (such property being hereinafter called the "real estate").

4. Oakland State Bank was merged into Great Western Bank in November of 2004, pursuant to Articles of Merger filed with the Nebraska Secretary of State's office attached hereto as Exhibit 7. Great Western Bank assigned the Deeds of Trust to the Defendant, Oakland . . . on December 5, 2005, and such assignment is attached hereto as Exhibit 8. Neither the merger of Oakland State Bank with Great Western Bank nor the assignment from Great Western Bank to Oakland . . . were recorded with the Phelps County Register of Deeds or indexed against the real estate at issue.

5. On or about March 1, 2010, the real estate taxes on the property had become delinquent to such an extent that the Phelps County Treasurer offered the taxes for sale pursuant to Neb. Rev. Stat. §77-1801 et.seq. [(Reissue 2009).] Situs, LLC purchased a Phelps County Treasurer's Certificate of Tax Sale for the real estate which was subsequently assigned to Vandelay Investments, LLC on February 13, 2013. On or about April 18, 2013, Vandelay Investments, LLC provided notice in accordance with Neb. Rev. Stat. §77-1801 et.seq. Vandelay Investments, LLC subsequently applied for a Treasurer's Tax Deed and a Treasurer's Tax Deed was issued by the Phelps County Treasurer to Vandelay Investments LLC, on July 25, 2013. Said deed was filed in the office of the Register of Deeds on August 1, 2013. A second Treasurer's Tax Deed was issued by the Phelps County Treasurer to Vandelay Investments, LLC on August 28, 2013 and filed in the

office of the Register of Deeds on September 9, 2013. The Treasurer's Tax Deeds are attached hereto as Exhibits 9 and 10.

6. The parties do not dispute the validity of the Treasurer's Tax Deed. The parties agree that the delinquent real estate taxes, notice of sale, and Treasurer's Tax Deed were matters of public record at the time of the Trustee's sale of the real estate.

7. Michael C. Klein was named Substitute Trustee on or about July 31, 2013, for the five (5) deeds of trust assigned to the Defendant, Oakland . . . . The Notice of Default and Notice of Sale associated with the Trustee's sale are attached hereto as Exhibits 11 and 12, respectively.

8. On October 2, 2013, Defendant, Michael C. Klein conducted a trustee's sale for the real estate. [The appellees] were the highest bidder at the Trustee's sale and [the appellees] paid to . . . Michael C. Klein as Trustee the sum of $40,001.00. A copy of the Tellers Check given to the Trustee is attached hereto as Exhibit 13. None of the Defendants [sic] gave notice to the [appellees] or any other bidders that a Treasurer's Tax Deed had been issued with respect to the property. On or about October 3, 2013, . . . Michael C. Klein as Trustee, executed a Trustee's deed conveying to the [appellees] the following described property: Lot Seven (7) and Eight (8), Einsel's Second Addition to Holdrege, Phelps County, Nebraska.

The Trustee's Deed is attached hereto as Exhibit 14.

9. Prior to the Trustee's sale, neither [the appellees] nor Defendants [sic] received actual knowledge of the Treasurer's Tax Deed.

10. Following the Trustee's Sale, the [appellees] became aware of competing claims to the title of the Property, specifically the Treasurer's Tax Deed issued to Vandelay Investments.

On January 21, 2014, the appellees filed their complaint against Oakland and the substitute trustee, Michael C. Klein. In their complaint, the appellees alleged that at the time of the trustee's sale, Oakland had no interest in the trustee's deed and, therefore, no interest in the real property. The appellees alleged that they were owed $40,001 plus interest. The appellees did not allege in their complaint a specific basis for recovery, such as rescission due to mistake or unjust enrichment because of a failure of consideration; accident; inadvertence; mutual mistake; relief from caveat emptor based on fraud, misrepresentation, or mistake; or constructive fraud. Nor was the case prosecuted on a specific theory. Compare, *French Energy, Inc. v. Alexander*, 818 P.2d 1234 (Okla. 1991); *First Nat. Bank v. Board of Managers*, 252 Ill. App. 3d 139, 625 N.E.2d 79, 192 Ill. Dec. 119 (1993).

On February 18, 2014, Oakland filed its answer in which it generally denied the allegations set forth in the appellees' complaint. Michael filed a motion to dismiss, and on May 2, the district court filed an order in which it sustained Michael's motion to dismiss. The court allowed the appellees 14 days to amend their complaint to state a cause of action against Michael, and the court stated that if no amended complaint was filed, the matter would proceed with Oakland as the only defendant. The appellees did not file an amended complaint. Accordingly, Michael is not a party to this appeal.

On April 3, 2015, the district court filed an order in which it found in favor of the appellees and against Oakland. With respect to whether Oakland had an obligation to notify bidders at the trustee's sale of the treasurer's tax deeds, the court stated that the parties were in equal positions prior to the trustee's sale and that both parties could have examined the public records. Thus, the court determined that Oakland "did not have an obligation to disclose the tax deeds and there was no implied warranty to do so."

With respect to whether the trustee's deed contained a representation or warranty that was breached by Oakland,

the district court cited Neb. Rev. Stat. § 76-1010(2) (Reissue 2009), which provides in part:

> The trustee's deed shall operate to convey to the purchaser, without right of redemption, the trustee's title and all right, title, interest, and claim of the trustor and his or her successors in interest and of all persons claiming by, through, or under them, in and to the property sold, including all such right, title, interest, and claim in and to such property acquired by the trustor or his or her successors in interest subsequent to the execution of the trust deed.

Based on § 76-1010(2), the district court determined that the trustee's deed contained "no representations or warranty as to the quality of title granted by the" trust deed.

With respect to whether the trustee's deed served to convey any rights to the appellees, the district court determined that the trustee's deed did not convey any rights to the appellees because the trustee had no rights to convey. Therefore, the district court determined that the trustee's sale was "improper and a nullity." In making this determination, the district court noted that the parties had stipulated that the treasurer's tax deeds were valid and that the treasurer's tax deeds were recorded on August 28 and September 9, 2013, which was prior to the trustee's sale on October 2. Citing *Knosp v. Shafer Properties*, 19 Neb. App. 809, 820 N.W.2d 68 (2012), the district court stated that a treasurer's tax deed passes title free and clear of all previous liens and encumbrances. Therefore, the district court stated that "[a]ll of [Oakland's] right, title and interest in the real estate was extinguished by issuance of the tax deeds and therefore [Oakland] had no interest to convey. The trustees [sic] sale should be voided and the money returned to [the appellees]." The district court ordered that Oakland pay the appellees $40,001 plus interest. The court also ordered that costs be taxed to Oakland and that each party pay their own attorney fees.

Oakland appeals.

## ASSIGNMENT OF ERROR

Oakland assigns, restated, that the district court erred when it determined that the trustee's sale was void and that the appellees are entitled to a return of the purchase price of $40,001.

## STANDARDS OF REVIEW

[1] An action to set aside a trustee's sale sounds in equity. See *Gilroy v. Ryberg*, 266 Neb. 617, 667 N.W.2d 544 (2003).

[2] On appeal from an equity action, an appellate court tries factual questions de novo on the record and, as to questions of both fact and law, is obligated to reach a conclusion independent of the conclusion reached by the trial court, provided that where credible evidence is in conflict in a material issue of fact, the appellate court considers and may give weight to the fact that the trial judge heard and observed the witnesses and accepted one version of the facts rather than another. *RGR Co. v. Lincoln Commission on Human Rights*, 292 Neb. 745, 873 N.W.2d 881 (2016).

[3] In a case in which the facts are stipulated, an appellate court reviews the case as if trying it originally in order to determine whether the facts warranted the judgment. *Jacobson v. Solid Waste Agency of Northwest Neb.*, 264 Neb. 961, 653 N.W.2d 482 (2002).

## ANALYSIS

Oakland argues that the district court erred when it determined that the trustee's sale was void and ordered Oakland to return the $40,001 purchase price to the appellees. Oakland generally argues that caveat emptor should apply and that when the appellees purchased the trustee's deed, they were on record notice of the treasurer's tax deeds that were issued to Vandelay Investments and recorded prior to the trustee's sale. We agree, and we reverse the decision of the district court.

The Nebraska Trust Deeds Act, Neb. Rev. Stat. § 76-1001 et seq. (Reissue 2009) (the Act) governs this case. A "[t]rust deed" is defined as "a deed executed in conformity with

sections 76-1001 to 76-1018 and conveying real property to a trustee in a trust to secure the performance of an obligation of the grantor or other person named in the deed to a beneficiary." § 76-1001(3). The parties to a trust deed are the trustor, the trustee, and the beneficiary. The "[t]rustor" is defined as "the person conveying real property by a trust deed as security for the performance of an obligation." § 76-1001(2). The "[b]eneficiary" is defined as "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest." § 76-1001(1). A "[t]rustee" is defined as "a person to whom title to real property is conveyed by trust deed, or his successor in interest." § 76-1001(4).

[4-8] With respect to the Act, we stated in *First Nat. Bank of Omaha v. Davey*, 285 Neb. 835, 838, 830 N.W.2d 63, 66 (2013):

> The Act authorizes a trust deed to be used as a security device in Nebraska and provides that real property can be conveyed by trust deed to a trustee as a means to secure the performance of an obligation. The Act includes detailed procedures that, in the event of a breach of the underlying obligation, permit the trust property to be sold without the involvement of any court. Specifically, the Act allows a trust deed to expressly confer upon a trustee the power of sale. Pursuant to this power of sale, a trustee can sell the property conveyed by a trust deed without any court's authorization or direction, though the trustee must comply with procedural requirements contained in the Act. Because the Act allows the property securing an obligation to be sold without the judicial involvement that would be required to foreclose upon a mortgage, the proceedings surrounding a trustee's sale pursuant to the Act are sometimes referred to as "nonjudicial foreclosure" or "trustee foreclosure."

[9] We further stated in *First Nat. Bank of Omaha v. Davey* that

[t]he Act . . . "authorizes the use of a security device which was not available prior to its enactment." Because the Act made a change in common law, we strictly construe the statutes comprising the Act, as have previous courts interpreting the Act. Thus, because trust deeds did not exist at common law, the trust deed statutes are to be strictly construed.

285 Neb. at 840-41, 830 N.W.2d at 68. In the absence of any indication to the contrary, we also give the language of the statutes of the Act their plain and ordinary meaning. See *First Nat. Bank of Omaha v. Davey, supra*.

We have noted that Nebraska's recording act, set forth in Neb. Rev. Stat. § 76-238 (Cum. Supp. 2014), is intended to impart to a prospective purchaser notice of instruments which affect the title of land in which such a purchaser is interested. Section 76-238(1) provides:

Except as otherwise provided in sections 76-3413 to 76-3415, all deeds, mortgages, and other instruments of writing which are required to be or which under the laws of this state may be recorded, shall take effect and be in force from and after the time of delivering such instruments to the register of deeds for recording, and not before, as to all creditors and subsequent purchasers in good faith without notice. All such instruments are void as to all creditors and subsequent purchasers without notice whose deeds, mortgages, or other instruments are recorded prior to such instruments. However, such instruments are valid between the parties to the instrument.

[10-12] Section 76-238(1) is a "'race-notice recording statute.'" *Westin Hills v. Federal Nat. Mortgage Assn.*, 283 Neb. 960, 965, 814 N.W.2d 378, 383 (2012). We have stated that

"[a] purchaser of real estate is required to take notice of instruments properly placed of record in the office of the register of deeds. . . . Increased diligence, alertness, and scrutiny in searching for the facts are expected of a

purchaser who accepts a deed that is less than a general warranty with full covenants of ownership and title."

*Ihde v. Kempkes*, 228 Neb. 433, 436, 422 N.W.2d 788, 790 (1988), quoting *Campbell v. Ohio National Life Ins. Co.*, 161 Neb. 653, 74 N.W.2d 546 (1956). Fundamental to the law of registry is the principle of establishing priority of title. *Westin Hills v. Federal Nat. Mortgage Assn., supra.*

Within the Act, with respect to instruments that are entitled to be recorded and put parties on notice of such instruments, § 76-1017 provides:

Any trust deed, substitution of trustee, assignment of a beneficial interest under a trust deed, notice of default, trustee's deed, reconveyance of the trust property and any instrument by which any trust deed is subordinated or waived as to priority, when acknowledged as provided by law, shall be entitled to be recorded, and shall, from the time of filing the same with the register of deeds for record, impart notice of the contents thereof, to all persons, including subsequent purchasers and encumbrancers for value, except that the recording of an assignment of a beneficial interest in the trust deed shall not in itself be deemed notice of such assignment to the trustor, his heirs or personal representatives, so as to invalidate any payment made by them, or any of them, to the person holding the note, bond or other instrument evidencing the obligation by the trust deed.

[13] In Nebraska, we have long held that the doctrine of caveat emptor applies to judicial sales. See, *Enquist v. Enquist*, 146 Neb. 708, 21 N.W.2d 404 (1946); *Norton v. Neb. Loan & Trust Co.*, 35 Neb. 466, 53 N.W. 481 (1892). With respect to the application of caveat emptor to judicial sales, we have stated:

"It is a well-settled rule that the doctrine of *caveat emptor* applies to all judicial sales, subject to the qualification that the purchaser is entitled to relief on the ground of after-discovered mistake of material facts or

fraud, where he is free from negligence. He is bound to examine the title, and not rely upon statements made by the officer conducting the sale, as to its condition. If he buys without such examination, he does so at his peril, and must suffer the loss occasioned by his neglect."

*Enquist v. Enquist*, 146 Neb. at 714, 21 N.W.2d at 407, quoting *Norton v. Neb. Loan & Trust Co., supra*.

We have not previously stated that the doctrine of caveat emptor applies to nonjudicial sales, such as a trustee's sale. However, other jurisdictions have applied caveat emptor in nonjudicial sales. See, e.g., *McPherson v. Purdue*, 21 Wash. App. 450, 585 P.2d 830 (1978); *Michie v. National Bank of Caruthersville*, 558 S.W.2d 270 (Mo. App. 1977); *Feldman v. Rucker*, 201 Va. 11, 109 S.E.2d 379 (1959).

Regarding the application of caveat emptor in the context of trustee's sales, it has been recognized that

many courts apply a *caveat emptor* approach to title or physical defects in the real estate. As one court stated: "[T]o the bidders [the trustee] owes no duty except to refrain from doing anything to hamper them in their search for information or to prevent the discovery of defects by inspection. He is under no duty to make representations or to answer questions; but if questions are asked and he undertakes to answer, then such answers must be full and accurate—nothing must then be concealed." Some jurisdictions have somewhat modified this approach by requiring the trustee to disclose material facts within his knowledge that would not otherwise "be readily observable upon reasonable inspection by the purchaser."

1 Grant S. Nelson et al., *Real Estate Finance Law* § 7.22 at 979 (6th ed. 2014).

[14] In *Michie v. National Bank of Caruthersville, supra*, the court stated in a trustee's deed case that "[a] purchaser at a foreclosure sale buys under the doctrine of caveat emptor . . . and the purchaser is required to take notice of everything in

the recorded chain of title." 558 S.W.2d at 275. In discussing caveat emptor, the U.S. Supreme Court has stated:

> The doctrine [of caveat emptor], substantially as we have stated it, is laid down in numerous adjudications. Where the means of information are at hand and equally open to both parties, and no concealment is made or attempted, the language of the cases is, that the misrepresentation furnishes no ground for a court of equity to refuse to enforce the contract of the parties. The neglect of the purchaser to avail himself, in all such cases, of the means of information, whether attributable to his indolence or credulity, takes from him all just claim for relief.

*Slaughter's Administrator v. Gerson*, 80 U.S. (13 Wall.) 379, 385, 20 L. Ed. 627 (1871). In accordance with these other jurisdictions and authorities noted above, just as we have applied the doctrine of caveat emptor in judicial sales, we now hold that the doctrine of caveat emptor applies in trustee's sales.

The instant case was tried in equity, and accordingly, we try factual questions de novo on the record and, as to questions of both fact and law, we are obligated to reach a conclusion independent of the conclusion reached by the trial court. See *RGR Co. v. Lincoln Commission on Human Rights*, 292 Neb. 745, 873 N.W.2d 881 (2016). Our de novo review of the record shows that in March 2010, prior to the date of the trustee's sale, the real estate was sold at a public tax sale to Situs, LLC, for delinquent taxes pursuant to § 77-1801 et seq. Situs received a certificate of tax sale, which Situs subsequently assigned to Vandelay Investments in February 2013. After providing notice, Vandelay Investments filed applications for tax deeds. On July 25, 2013, the county treasurer issued a tax deed to Vandelay Investments, and the treasurer's tax deed was recorded on August 1. A second treasurer's tax deed was issued to Vandelay Investments on August 28, and the second treasurer's tax deed was recorded on September 9.

All of this occurred prior to the trustee's sale, which occurred on October 2.

[15] In *Knosp v. Shafer Properties*, 19 Neb. App. 809, 817, 820 N.W.2d 68, 74 (2012), the Nebraska Court of Appeals held that "a treasurer's tax deed, issued pursuant to § 77-1837 and in compliance with §§ 77-1801 to 77-1863, passes title free and clear of all previous liens and encumbrances." The parties in this case stipulated that they "do not dispute the validity of" the treasurer's tax deeds that were issued to Vandelay Investments. Accordingly, pursuant to *Knosp*, the treasurer's tax deeds that were issued to Vandelay Investments passed title free and clear of all previous liens and encumbrances, including the trust deed at issue in this case. Therefore, at the time of the trustee's sale on October 2, 2013, the trust deed had been divested of title due to the issuance of the treasurer's tax deeds.

As set forth above, the record shows that both treasurer's tax deeds issued to Vandelay Investments were recorded prior to the trustee's sale. The parties stipulated that neither party had "received actual knowledge" of the issuance of the treasurer's tax deeds; however, the parties further agreed that the treasurer's tax deeds "were matters of public record at the time of the [t]rustee's sale of the real estate." Because the treasurer's tax deeds were recorded before the trustee's sale was held, the appellees were on record notice of the treasurer's tax deeds. See §§ 76-238(1) and 76-1017.

The appellees in this case sought relief from entering into a deal with an unfavorable outcome. The district court focused on the outcome of the transaction and determined that because the trust deed had been divested of title, the trustee's sale was void, and ordered Oakland to return the purchase price to the appellees. The district court's determination does not comport with the doctrine of caveat emptor, which we have determined applies in this case. Under the doctrine of caveat emptor, the purchaser "'is bound to examine the title'" and if the purchaser "'buys without such examination, he does so at

his peril, and must suffer the loss occasioned by his neglect.'"
*Enquist v. Enquist*, 146 Neb. 708, 714, 21 N.W.2d 404, 407
(1946), quoting *Norton v. Neb. Loan & Trust Co.*, 35 Neb. 466,
53 N.W. 481 (1892). In this case, had the appellees examined
the title, they would have realized that the treasurer's tax deeds
had been issued and that the trust deed had been divested of
title. In taking such steps to examine the chain of title, the
appellees would have protected themselves from entering into
an unfortunate deal. We have stated that a purchaser of real
estate is required to take notice of instruments properly placed
of record in the office of the register of deeds. See *Ihde v.
Kempkes*, 228 Neb. 433, 422 N.W.2d 788 (1988). However,
because the appellees failed to examine title before bidding
at the trustee's sale, they "'must suffer the loss occasioned by
[their own inattention].'" *Enquist v. Enquist*, 146 Neb. at 714,
21 N.W.2d at 407.

We have stated that "[e]quity will not relieve a purchaser
of his own negligence." *Norton v. Neb. Loan & Trust Co.*,
35 Neb. at 471, 53 N.W. at 482. See, also, *Slaughter's
Admistrator v. Gerson*, 80 U.S. (13 Wall.) 379, 383, 20 L. Ed.
627 (1871) (stating that "[a] court of equity will not under-
take, any more than a court of law, to relieve a party from
the consequences of his own inattention and carelessness").
Therefore, we determine that the district court erred when it
relieved the appellees of the consequences of their inattention,
determined that the trustee's sale was void, and ordered that
Oakland return the purchase price to the appellees. We reverse
the decision of the district court and remand the cause with
directions that the district court enter judgment in favor of
Oakland and dismiss the appellees' complaint.

## CONCLUSION

In this case, prior to the trustee's sale, the treasurer's
tax deeds were issued to Vandelay Investments. Our law is
clear that a treasurer's tax deed passes title free and clear
of all previous liens and encumbrances, and accordingly, the

treasurer's tax deeds issued to Vandelay Investments divested the trust deed of title. The treasurer's tax deeds were recorded prior to the trustee's sale, but the appellees failed to examine the record.

We conclude that the doctrine of caveat emptor applies to a trustee's sale, and in this case, the appellees must suffer the consequence of their own inattention. In this case, the trust deed had previously been divested of title by issuance of the treasurer's tax deeds to Vandelay Investments which tax deeds were recorded. The appellees purchased the trust deed without examining the record, but they are nevertheless deemed to be on record notice. Despite the appellees' failure, the district court determined that the trustee's sale was void and ordered Oakland to return the purchase price to the appellees. These rulings were error. We reverse the decision of the district court and remand the cause with directions that the district court enter judgment in favor of Oakland and dismiss the appellees' complaint.

Reversed and remanded with directions.